BARRINGER et al. ADMINISTRATORS OF STORKE *vs.* NESBIT et al.

Where a note and certificates of stock correspond exactly as to dates and amounts, and there is no other proof of the consideration of the note, that exact correspondence, if left unexplained by the other party, is sufficient basis to uphold the finding of the jury, that the certificates of stock formed the consideration of the note.

An assignee of a note takes the place of the assignor; and if the latter has been guilty of fraud in transactions .connected with the note, the former is equally affected by it.

A vendor practices a fraud upon the vendee; the vendee sells and transfers to the original vendor, in discharge for his own indebtedness for the thing sold, the note he received from the sub-vendee : in an action by the original vendor against the sub-vendee upon this note, it is competent for the sub-vendee to prove the fraud practiced by the original vendor in the first sale, and to set up the same defence on that account that his immediate vendor could have set up.

A proprietor of land issues stock in a town which he intends to lay off upon his grounds : he uses various artifices to decoy purchasers; induces some to lend their names under a promise never to call on them to pay; succeeds in selling some of the stock, but afterwards abandons the scheme, and declares his intention not to attempt to enforce the collection of any of the debts contracted for the stock. *Held,* that these facts constitute such a want or failure of consideration as will defeat an action brought upon a note given for the stock.

When improper testimony has been admitted, if there be also sufficient legal testimony to justify the verdict, without regard to that which is exceptionable, and it is clear that justice has been done, and there is little reason to believe a different result would ensue upon a second trial, a new trial will not be granted. In a doubtful case the rule would be different.

THIS case comes, by writ of error, from the circuit court of Pontotoc County.

The facts proved in the court below were, in substance, that David Storke, the appellants' intestate, being the owner of one hundred and fifty acres of land adjoining the town of Colbert, on the Tombigbee river, conceived the intention of laying off his land into town lots, establishing a stock therein, and selling the stock to purchasers upon speculation. In pursuance of his intention, he issued certificates of stock in the town, which he called "Upper Colbert;" each share of stock was of the nominal value of $100. There were two hundred shares. He employ-

ed agents to procure subscribers to the stock, made representations to these agents, and authorized them to make them to others, to induce subscribers, of the character and value of the land, and its eligibility as a site for a town, which representations were altogether false: that upon the faith of these representations, the stock was subscribed for, the subscriptions being taken in the town of Pontotoc, and the subscribers being ignorant of the locality, and subscribing upon the faith of these false representations, and those made by Storke in person : that to induce these persons to subscribe, Storke requested leading men in the town of Pontotoc to become subscribers, under the promise that they might afterwards retain the stock, or not, as they might please. Storke made to various witnesses who testified, untrue representations about the value and situation of the land, upon the faith of which they became subscribers: that the land was wholly unfit for the purpose contemplated, fifty acres being subject to overflow, &c.

That upon the faith of these false representations, one Thomas S. Renean, the payee of the notes sued on, purchased ten shares, and received ten certificates of stock, five of which were in the possession of the defendants, each precisely alike, and as follows :

"Pontotoc, October 23, 1836.

"This is to certify that Thomas S. Renean is the holder of "one share of stock in that part of the town of Colbert, which is "situated in fractional sectional No. 31, township 16, range 8, "east; the same being the two hundredth part of twenty thou- "sand dollars, the par value of said stock, which will entitle the "holder, his or her assigns, to all the benefits and profits which "may accrue thereon, free from every incumbrance whatever, "except the proper proportion of expenses.

"DUNCAN CLARKE.
"W. W. CHERRY.
"LEONIDAS FRANKLIN."

(Indorsed.) "For value received, I assign the within share "of stock to W. D. Nesbit, Nov. 10, 1836.

"THO. S. RENEAN."

Storke executed, by deed, a conveyance of the land to the three commissioners, and portions of the lots were at two different periods sold by the commissioners for the benefit of the stockholders, but no conveyances were made, and the notes given for the purchase monies of the lots were afterwards cancelled; and that Storke had frequently . stated his intentions never to sue upon the notes given for stock, or attempt their collection, and to one witness stated that " the town had fallen through, and as many other such towns in Mississippi had blown up, and the notes given therefor never could be collected."

The notes sued on were for $500 each, payable to Thomas S. Renean, and bore date November 10, 1836.

The court below permitted the five certificates of stock held by the defendants, without further proof than the correspondence of dates and amounts with the date and amount of the note, to be read in evidence to the jury ; to which, exception was taken by the plaintiffs.

The court below also permitted proof of the frauds practiced by Storke upon the subscribers to the stock, to be made to the jury ; to which, the plaintiffs also excepted.

The jury found for the defendants, and the court below refused to grant a new trial, which was made matter of exception, also, by the plaintiffs.

The questions raised by these three exceptions were the only points presented for the consideration of the court.

*Gholson*, for plaintiffs in error.

It is submitted that the circuit court erred in permitting the certificates of stock, described in the first bill of exceptions, to be read to the jury as evidence. These certificates were not signed, either by the plaintiffs or their intestate, Storke. No evidence was given that these certificates had any connection with the consideration of the note sued on. The nominal value of all the certificates, and the amount of the two notes sued on, correspond—the notes bore date on the 10th November, 1836 ; there was endorsed on the certificates, a transfer to W. D. Nesbit, one of the makers, bearing date on the same day. If such

slight correspondence in papers, will entitle the one offered to be read, any restriction to the introduction of written testimony would seem superfluous.

The court below clearly erred in admitting evidence that fraud and misrepresentation had been used in a former contract with which the defendants had no connection. These notes, it is shown, were given for an interest in a town purchased from Renean by one of the defendants. There is no testimony to impeach that contract on any ground whatever. The defendants, however, wished to prove that when Renean purchased the same interest from Storke, fraudulent representations were used to induce him to enter into the contract. No contract was ever entered into between Storke and the defendants; he had made no representations to them to induce them to contract with Renean. Under these circumstances, is there any rule of evidence, or principle of justice, that would entitle them to go back and inquire into the transactions between Storke and Renean?

In this case Storke was the indorsee of Renean, and certainly no defence could be allowed as to the consideration of the notes sued on against Storke, that would not have been good against Renean. Had the suit been in the name of Renean, it would have been a singular defence for the defendants to have relied on, that though the contract between them and Renean was fair, yet that Renean, when he purchased the same property from Storke, had been imposed on.

It is also submitted that the court below erred in refusing to grant a new trial. In the last bill of exceptions, the whole testimony being set out, shows more clearly the error of the court in admitting the irrelevant and illegal testimony above mentioned. This of itself was a sufficient ground for a new trial.

The evidence set out clearly does not sustain the verdict of the jury. Certain representations, stated to have been made by Cherry, the agent of Storke, in selling out the shares of stock in the town, even if untrue, are not of that character to affect the sales on the ground of fraud. *Anderson et al.* v. *Bennett et al.* 5 How. 165.

It does not appear that the representations were made either

to Renean or the defendants, and representations made to other persons were certainly not to be weighed by the jury.

There is not sufficient testimony to show that the notes sued on were executed in consideration of the shares of stock.

The evidence of two of those who had purchased stock, in relation to the declarations of Storke in his lifetime, as to coercing payment of the notes given for stock, cannot be entitled to any weight. He did not admit that he had practiced any fraud. His declarations certainly did not amount to a release of his right to collect the notes. The town speculation had changed with the change of times ; he no doubt apprehended difficulty in collecting the notes, and was disposed to be indulgent to those indebted for stock, and he does not say that he relinquishes his right to collect the notes ; even if he had, such a promise, without any consideration, would be void.

It may be further observed, that the testimony shows that those who purchased the stock in the town, proceeded to appoint commissioners, and that those commissioners not only advertised the lots in the town for sale, but actually sold at public sale a part of the lots for a large amount of money. After such acts on the part of the stockholders, an attempt to avoid their contracts with Storke, on a pretence of fraud, should not be successful.

*Thompson*, for defendants in error.

The defendants, on the trial of the cause, relied on the fact that the notes sued on, given by them to Renean, and by him assigned to Storke, were given for stock in the town of Colbert— and that said stock was of no value, and that the said Storke had practiced a fraud in selling said stock to Renean, and these would affect him when suing as assignee of the notes which defendants had given to Renean for this stock.

The first exception taken by plaintiffs to the judgment of the court below, is, that the court erred in allowing to be read to the jury the certificates of stock given by the commissioners of the town to Renean, to show by the correspondence in dates, amount, &c., of said certificates, and the date of assignment of

the same by Renean to defendants, (being the same day as the date of their notes to him and assigned to said Storke,) that the consideration of their notes to said Renean was the aforesaid stock. The consideration could be proved by circumstances as well as by positive proof, and the foregoing circumstances certainly conduced to the establishment of the thing desired to be proved to the court and jury; and, therefore, was legal evidence and properly admitted.

2. The second exception cannot avail the plaintiffs, because the evidence is not set out, which it is contended the judge improperly admitted. But if the plaintiff did practice a fraud on Renean, and was the cause of Renean (even, say, without a fraudulent intent) passing a thing of no value to the defendants, when the plaintiff brings this equitable action as assignee of the note given for the thing of no value, which defendants had been induced to take in consequence of the fraudulent acts of the plaintiff in imposing it on their vendor; would not the note properly be subject to impeachment in the hands of the fraudulent holder?

3. From the evidence in the cause, it is contended by the counsel for defendants, that the jury were authorized to infer that the note sued on was given for an interest in the town of Colbert—that the whole scheme was fraudulent—that Storke was the person who originated it, being the owner, and carried out the scheme—and that the stock is of no value whatever, and the consideration of the notes has failed.

4. It is apparent that right and justice have been done, and, therefore, the verdict and judgment of the court should not be disturbed.

Mr. Justice CLAYTON delivered the opinion of the court.

This was an action of assumpsit upon several promissory notes, given for the purchase of stock in the town of Upper Colbert. The notes were payable to Thomas S. Renean, and were by him assigned to Storke, the decedent, in his lifetime, who was the owner of the land upon which the town was to have been built. Renean had purchased some of the stock, and.

these notes, it seems, were executed to him for stock which he sold to the defendants, and were by him transferred to Storke. The general issue was the only plea, but the want or failure of consideration and fraud was relied on in the defence. Several bills of exception were filed during the progress of the trial; the jury found a verdict for the defendants; a motion for a new trial was made and overruled, and an appeal taken to this court.

The first ground relied on for the reversal of the judgment, was the introduction of testimony alleged to be irrelevant and improper. This consisted of several certificates for stock in the town, but there was no proof that the notes were given for those certificates, except the correspondent agreement in dates and amounts between the notes and the transferred certificates. Apart from this testimony the consideration of the notes was not shown.

No valid objection is perceived to the admission of this evidence. The defendants were under the necessity of showing for what the notes were given; this fact they had to establish, and it might be done as well by circumstantial as by direct proof. The exact correspondence of dates and amounts, between the notes and the transfer of the certificates, might properly aid the jury in coming to a conclusion; and if left unexplained by the plaintiff, might justly form the basis of their verdict.

The next objection is, that the defendants were permitted to give evidence of fraud on the part of Storke in the sale of the stock to Renean, in order to prevent a recovery by the administrators of Storke, upon the note of the defendants. This objection is made upon the ground that a fraud practiced by Storke upon Renean forms no defence for the appellees in the action against them. Usually this is correct. A fraud upon one man can form no defence for another, unless there is some privity or relation between them in regard to the transaction. An assignee takes the place of the assignor, and if the latter has been guilty of fraud in the transaction, the former is equally affected by it. Is not the converse of this proposition equally true? If a vendor make fraudulent representations to the vendee in regard to the thing sold, it is clear the latter may set up the fraud as a de-

fence ; if he resell, and then transfer the note which he receives, upon the resale, to the original vendor in payment of his purchase, may not the same defence be made by the sub-vendee, when sued upon his note by the party guilty of the fraud? It would be hard to maintain the contrary. In this case, if the proof had shown that Renean transferred the note of the defendants to Storke, in payment or discharge of his debt to Storke, for the purchase of the same stock, such a connection would thereby have been established between Storke and the defendants as would have made the evidence clearly admissible. In the absence of such connection, the evidence objected to was not legal.

The remaining bill of exceptions was taken to the refusal of the court to grant a new trial. According to the testimony as therein contained, the note was given for stock in a town, of which the plaintiff was the original proprietor. He used various artifices to decoy purchasers ; he induced some to lend the use of their names to advance his schemes, with an assurance that they should never be called on to pay. Afterwards, the whole scheme miscarried and was abandoned, and Storke repeatedly declared that he would never attempt to enforce the collection of any of the debts contracted for the stock. It will be borne in mind, that the purchase was not of certain, designated lots, but of stock in the town, which became wholly worthless when the original projectors relinquished their design. The case of want or failure of consideration was therefore plainly made out. No charge was asked of the court, but the whole matter was left to the determination of the jury. The finding was, in our opinion, entirely in conformity with the evidence upon the point of want of consideration, and there is no reason for disturbing it, unless upon the ground of the admission of improper evidence.

The decisions are not uniform, as to the course proper to be taken by the appellate court, when improper testimony has been admitted, if there be also sufficient legal testimony to justify the verdict, without regard to that which is exceptionable. We think, however, the weight of reason and of authority is with the rule, that a new trial will not be granted under such

circumstances, when the court is satisfied that justice has been done, and that there is little reason to believe a different result would ensue upon a second trial. In a doubtful case, the rule would be different. *Crary* v. *Sprague*, 12 Wen. 41. 8 Wen. 671. 3 Johns. 532. Graham on New Trials, 246, 401.

We are satisfied that there is abundant testimony to support the verdict, independent of that referred to in the second bill of exceptions relative to the alleged fraud, and we are not therefore disposed to disturb it.

*Judgment affirmed.*